

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom A. Craven
County Auditor
McLennan County
Waco, Texas

Dear Sir:

Opinion No. O-4543
Re: Questions relating to
redemption fees where the
property was assessed in
the name of "unknown owners".

     We have received and considered your request for
an opinion of this Department. We quote from your request
as follows:

> "Several lots located in the town of McGregor,
> McLennan County, Texas have been shown on the
> State and County tax rolls since prior to 1919
> under the name of 'unknown owners'. Although
> some of these are adjoining lots, most of them
> are random pieces of property located in dif-
> ferent parts of the town. Some of the adjoin-
> ing lots have been listed together on the same
> assessment sheet for each year; others have
> been listed as single items on separate assess-
> ment sheets. None of the State or County taxes
> on this property have been paid since prior to
> 1919.

> "The records of the District Clerk's office show
> that on June 8, 1933 a tax judgment was entered
> against these lots for the 1929 taxes. This judg-
> ment record also indicates that a man by the name
> of Gilmore purchased this property under the tax
> judgment sale for $57.23. Although a constable's
> tax deed to Gilmore is on record in the County
> Clerk's office in which receipt of the purchase

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

price is acknowledged, no other evidence is
found that the $57.23 was ever actually paid
by Gilmore. The records of the District Clerk's
office and the Tax Collector's office do not show
that the Clerk's costs and the 1929 taxes were re-
ceived by these offices. There is on file in the
County Clerk's office a quit claim deed under
date of December 14, 1933 from Gilmore to the State
of Texas and the County of McLennan, consideration
$1.00, covering these lots.

"Recently, McLennan County advertised these lots
for sale. They were sold. The purchasers were
told that under this sale McLennan County would
deed to them whatever interests and only what-
ever interests McLennan County held in them. It
was the general understanding of these purchasers
that no State and County tax liens would be re-
tained against any of this property. It was the
intention of the McLennan County Commissioners'
Court that no such tax liens would be claimed. It
was and is the intention of the Commissioners'
Court to use whatever portion of the money derived
from this sale necessary to pay, in the usual man-
ner, the delinquent taxes legally due the State
and County on these lots.

"Article 7331 of the statutes as applied to delin-
quent taxes on property for 1929 and prior years
allows 'unaccountable fees' to tax collectors for
performing certain specified duties. Said fees
to be taxed as costs against the delinquent. In
determining the amount of fees to be collected
under 7331 with delinquent taxes for 1929 and prior
years, it has been the practice to collect one dol-
lar for each assessment for each year delinquent
taxes were paid. Our Tax Collector has construed
an assessment to mean all the property assessed in
the name of one person for any one year. As indi-
cated hereinbefore, the McLennan County Commission-
ers Court proposes to pay, out of the proceeds

derived from the sale of this property, all the delinquent taxes legally due against this property. In connection with this, two questions arise on which I shall thank you to give me your opinion.

"In view of article 7333 of the statutes, would it be the duty of the Tax Collector to collect for the Tax Collectors who were in office during 1929 and prior years as provided under article 7331 as it existed in those years when the County pays the taxes under the circumstances that have been outlined?

"Should your answer to the first question be 'yes', on what basis should the collector's cost be calculated? This question comes up because of the fact that all the property in question for each of the years from 1919 through 1929 (and for all other years this property appears on the tax rolls) appears on the tax rolls under the name 'unknown owners'. As indicated before, in some instances lots are grouped on one assessment sheet and in other cases lots are listed singly on assessment sheets."

After carefully considering the facts submitted by you we are of the opinion that the Commissioners' Court of your county would be authorized to pay the State and County taxes out of the purchase money received by it in compliance with its contract and agreement with the purchaser. We, likewise, believe that the county would not be violating the provisions of either Article 7331 or 7333, Vernon's Civil Statutes of Texas, as amended, if it should pay the proper redemption costs out of the actual purchase money received by it for its interest in the property in compliance with the contract between it and the purchaser. The prohibitory provisions of said Articles 7331 and 7333, that neither the county nor the State shall be liable for the redemption fee, are not applicable

Honorable Tom A. Craven, Page 4

to the fact situation before us since the redemption fee
here' would be paid from the purchase money and not out
of the regular funds of the county derived from some
other source.

The collection of all delinquent ad valorem
taxes due the State, county, municipality or other de-
fined subdivisions that were delinquent prior to Decem-
ber 31, 1919 was forever barred by Acts Forty-fourth
Legislature, 1935, Regular Session, page 355, Chap. 128
(Article 7336f, Vernon's Civil Statutes of Texas.)

With regard to the status of the $1.00 redemp-
tion fee, provided in Article 7331, Vernon's Civil Sta-
tutes of Texas, as amended, from January 1, 1920 to
August 14, 1923 (the date when Article 7691, R. C. S.,
1911 was amended), we desire to quote from our Opinion
No. 0-2995, as follows:

"...."

"It has been definitely decided that in
counties operating under the maximum fee bill,
the tax collector's fee of One Dollar ($1.00)
provided for in the above mentioned Article,
Article 7691, was required to be accounted for,
and therefore could not be retained by the col-
lector (Bitter vs. Bexar County, 11 S. W. (2)
162; Turner vs. Barnes, 19 S. W. (2) 325; Id.
27 S. W. (2) 532; Cameron County vs. Fox, 32
S. W. (2) 653; Id. 61 S. W. (2) 483; 64 S. W.
(2) 140).

"The above mentioned provision of Article
7691 remained in force until the year 1923, when
it was amended and became Article 7331, Revised
Statutes, 1925, under which the collector was not
required to account for, but could retain said
fees, in addition to all other compensation accorded
him by law.

617

"Article 7331 was amended by the Forty-first Legislature, Fourth Called Session, page 30, Chap. 20, Par. 8, and this Act became effective January 1, 1931.  It will be noted that the statute as amended omitted the provision providing that the fee above mentioned should be additional and cumulative of all fees and not accounted for as fees of office."

In our Opinion No. 0-1679, a copy of which is enclosed, we held that an incumbent in office is the proper person to collect delinquent fees, properly earned in accordance with the law of his predecessors in office.  Said Opinion No. 0-1679 was modified, on another point, by our Opinion No. 0-2290.  A copy of the opinion last mentioned is enclosed.

From a consideration of the foregoing authorities we, therefore, answer your first question as follows:

1.  The present incumbent tax assessor-collector should collect the proper redemption fees that were properly allowed by law and which became due by reason of services performed by his predecessors in office.

2.  The incumbent tax assessor-collector should account for the redemption fees collected, during the period of time covered in your first question, as follows:

(a)  Those fees properly chargeable from January 1, 1920 to August 14, 1923 should be disbursed in accordance with Articles 3891 and 3892, R. C. S., 1925, prior to their amendment by Acts 1930, Forty-first Legislature, Fourth Called Session, page 30, Chap. 20.

Honorable Tom A. Craven, Page 6

(b)  Those redemption fees properly charge-
able from August 14, 1923 to January 1, 1931
should be turned over to the proper ex-tax
collector who earned them and is entitled to
receive them for services rendered during his
tenure of office.

Concerning your second question we call your
attention to our holding in Opinion No. O-1619 from which
we quote:

"In construing this old statute, the
Attorney General's Department, in a number
of opinions, written by Honorable H. Grady
Chandler, Assistant Attorney General, held
that the $1.00 fee provided therein should
be allowed therein for each tract of land
upon which delinquent taxes were owed. . . .

"Since Article 7331 was amended in 1930,
there have been no cases which have been con-
cerned with the proposition as set out in your
letter.  However, the question was ruled upon
by Attorney General James V. Allred in a con-
ference opinion, dated August 18, 1933, written
by Assistant Attorney General Homer C. DeWolfe.
Mr. DeWolfe's opinion reads, in part, as follows:

"'Here again the compensation allowed
is for the performance of the series of
acts which must be substantially performed
before the fee allowed is earned.  However,
the fee is not dependent upon the filing of
suit to collect the taxes delinquent, but
is dependent upon the performance of the
several services enumerated and upon the
actual collection of the taxes, penalties,
interest and costs.

"'It must further be observed that the
term "correct assessment" as used in the
Act of the Forty-first Legislature, is

. . meant "the inventory of all properties owned by an individual for any one year". Theretofore, the term "correct assessment" had been used to mean each tract of land as defined by the Legislature and by the Courts; under the Act of the Forty-first Legislature, however, the term "correct assessment" would include all tracts of land upon which taxes were delinquent for any one year, located in the county and owned by any one individual.'"

Article 7198, Vernon's Civil Statutes of Texas, authorizes a tax assessor to assess property in the instances therein provided, in the name of unknown owners when the names of the real owners are not known. Article 7205, of the same statutes, authorizes the assessor to assess any property in his county that has not been listed in the name of the owner, if known, and if the owner is unknown to list the property in the name of "unknown owner".

Since the redemption fee provided for the tax assessor-collector is for compensation due him for performing certain services, as heretofore stated, we believe that property listed by him in the name of "unknown owners" on the unrendered tax lists could not be presumed to belong to the same person. In view of the wording of Article 7331, supra, at all times since the statute was first enacted, including all of its amendments, we believe that such statute has always contemplated that the redemption fee be calculated upon the basis that each piece of property rendered by the tax assessor in the name of "unknown owners" was the subject of individual ownership where the rendition was properly made in good faith and where there was no available information before the tax assessor showing

to the contrary. Following the presumption that the
tax assessor would not have performed his official
duties contrary to the law it would appear that he
would have only rendered the property in the name
of "unknown owners" in instances where the owner
was in fact unknown. To hold that property rendered
in the name of "unknown owners", under the facts
submitted by you, was in fact owned by the same
person, would, we think, be imposing a presumption
upon a presumption and would be a construction con-
trary to the very terms of the statute itself.

Prior to January 1, 1931, (the date upon
which Article 7691, R. C. S., 1911 was amended by
the Acts of the Forty-first Legislature, Fourth
Called Session, Chap. 20, Sec. 8) the $1.00 redemption
fee was provided for each correct assessment on each
"tract" of land upon which taxes become delinquent,
each "tract" considered as one assessment. State
vs. Slater (S. Ct.), 38 S. W. (2) 1097. The case
just referred to held that the word "tract" was the
unit which was the least or smallest subdivision.

From a consideration of all of the fore-
going authorities your second question is answered
as follows:

1. From January 1, 1920 to January 1,
1931, the $1.00 redemption fee provided for in
Article 7691, R. C. S., 1911, and as amended by
House Bill 9, Acts Forty-first Legislature, Fourth
Called Session, may properly be collected upon the
basis of each correct assessment on each tract of
land to be sold, each tract considered as one
assessment. The word "tract" would mean the unit
which was the least or smallest subdivision.

2. From January 1, 1931 to date the $1.00 redemption fee provided in Article 7331 of Vernon's Civil Statutes of Texas, as amended, may properly be chargeable for each "correct assessment", as that term is defined in said statute, which term would include all tracts of land upon which taxes were delinquent for any one year, located in the county and owned by any one individual. Where property on the unrendered tax rolls has been rendered by the assessor, in good faith, in the name of "unknown owners" each separate "tract" should be considered to be owned by different persons.

We trust that in this manner we have fully answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Harold M. McCracken

Harold McCracken
Assistant

HM:MBR

APPROVED JUL 29, 1942

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN